IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY INGRAM, | ) | Case No. 1:20-cv-2692 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | THOMAS M. PARKER |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

Plaintiff, Timothy Ingram, seeks judicial review of the final decision of the

Commissioner of Social Security, denying his applications for disability insurance benefits

("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security

Act.  Ingram challenges the Administrative Law Judge's ("ALJ") negative findings, contending

that the ALJ misevaluated the opinion of his treating physician, Hazem Nouraldin, MD, and

erred in determining his residual functional capacity ("RFC").  Because any alleged error in the

ALJ's evaluation of the opinion evidence was harmless and the ALJ otherwise applied proper

legal standards and reached a decision supported by substantial evidence, the Commissioner's

final decision denying Ingram's applications for DIB and SSI must be affirmed.

## I.     Procedural History

Ingram reapplied[1] for DIB and SSI on February 28 and March 16, 2019, respectively.
(Tr. 223, 225).[2]  Ingram alleged that he became disabled on May 21, 2014, due to: 1. diabetes;
2. high blood pressure; 3. osteoarthritis; 4. "juxta acetabu[l]ar;" 5. basal skin cancer;
6. abdominal fistula; 7. ventral hernia; 8. diverticulitis; 9. ostomy repair; 10. central abdominal
pain; and 11. bone spurs in his right hip.  (Tr. 223, 225, 247).  The Social Security
Administration denied Ingram's application initially and upon reconsideration.  (Tr. 85-110, 113-
34).  Ingram requested an administrative hearing.  (Tr. 169).

ALJ Joseph G. Hajjar heard Ingram's case telephonically on April 8, 2020 and denied his
applications on April 23, 2020.  (Tr. 15-27, 32-62).  In doing so, the ALJ determined at Step
Four of the sequential evaluation process that Ingram had the RFC to perform medium work,
except that Ingram "can frequently climb ramps and stairs; never climb ladders, ropes or
scaffolds; and frequently stoop."  (Tr. 19).  Based on vocational expert testimony that an
individual with Ingram's age, experience, and RFC could work as a laundry worker, linen room
attendant, and "bagger retail trade," the ALJ determined that Ingram was not disabled.  (Tr. 25-
26).  On October 29, 2020, the Appeals Council declined further review, rendering the ALJ's
decision the final decision of the Commissioner.  (Tr. 1-3).  On December 3, 2020, Ingram filed
a complaint to obtain judicial review.[3]  ECF Doc. 1.

---

[1] Ingram previously applied for DIB and SSI in June 2014, claiming a disability onset date of May 21,
2014.  Those applications were denied after ALJ review on June 28, 2016.  Neither party disputes that the
period under adjudication in this matter is from June 28, 2016 to April 23, 2020, the date of the ALJ's
decision on Ingram's current applications.
[2] The administrative transcript appears in ECF Doc. 13.
[3] This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and the parties consented to my
jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  ECF Doc. 9.

II.     **Evidence**

    A.     **Personal, Educational, and Vocational Evidence**

Ingram was born on January 19, 1961 and was 53 years old on the alleged onset date. (Tr. 85, 223).  Ingram completed one year of college and had no specialized or vocational training.  (Tr. 41, 248).  He had prior work as a hospital housekeeper, which the ALJ determined he was unable to perform.  (Tr. 25, 248).

    B.     **Relevant Medical Evidence**

Around the time of Ingram's alleged onset date, Ingram had a history of perforated diverticulitis, for which he underwent a colectomy and reversal of ileostomy in 2012.  (Tr. 374). In December 2013, Ingram began to report abdominal pain.  (Tr. 381).  The source of the pain turned out to be a ventral hernia, and Ingram underwent a laparoscopic ventral repair with mesh in Mach 2014.  (Tr. 363-70, 373, 377, 382).  Following surgery, Ingram reported no pain.  (Tr. 358, 360-61).  In November 2014, however, he began to report mild pain and drainage from the incision site.  (Tr. 355, 357).  A CT scan revealed that the cause was a small sinus, which was surgically removed in January 2015.  (Tr. 353).

On October 19, 2016, Ingram visited Hazem Nouraldin, MD, reporting abdominal and knee pain.  (Tr. 579-80).  Ingram rated his abdominal pain at 8/10 in intensity with pain medication but stated that he was "good adl."  (Tr. 580).  Ingram's physical examination results were unremarkable.  (Tr. 580-81).  Dr. Nouraldin prescribed several medications, including Percocet 5-325 mg., to be taken as needed.  (Tr. 580).

Ingram returned to Dr. Nouraldin on a near monthly basis through January 2020.  *See* (Tr. 463-580).  For the remainder of 2016, Ingram reported abdominal and knee pain, both of which he rated at 8/10 in intensity.  (Tr. 573, 577).  Ingram's physical examination results were

remarkable only for mild knee effusion, moderate knee tenderness on the medial and lateral sides, and full range of motion with pain. (Tr. 573, 577). Dr. Nouraldin continued his medication treatment. (Tr. 572-73, 576-77).

In January 2017, Ingram was diagnosed with generalized abdominal pain. (Tr. 569). Between January and June 2017, Ingram repeatedly reported abdominal pain, which he rated at 8/10 in intensity and stated was "improved by pain meds [and] functioning on pain meds." (Tr. 548, 551, 554, 557, 560, 563, 567, 570). Ingram's physical examination results were unremarkable. (Tr. 548-49, 551-52, 554-55, 557-58, 560-61, 564, 567-68, 570-71). Dr. Nouraldin advised Ingram to continue taking his pain medications (Percocet 5-325 mg., as needed) and do home exercises. (Tr. 547-48, 550-51, 553-54, 556-57, 559-60, 563, 566-67, 569-70). Ingram did not report pain symptoms for the remainder of 2017. *See* (Tr. 530-46).

In January 2018, Ingram reported that he'd had hip pain for two months, which he rated at 8/10 in intensity. (Tr. 527-28). In February 2018, Ingram underwent x-ray examination of his hip, the results of which showed a calcaneal spur. (Tr. 386-87). Ingram continued to report hip pain through March 2018 (Tr. 519, 524), after which he reported pain rated at 8/10 in intensity without identifying what hurt (Tr. 513, 515). In April 2018, Ingram underwent a fall risk assessment, the results of which were that he had no impaired functional mobility and "No, Pain affecting level of function." (Tr. 515). In June 2018, Ingram reported abdominal pain, which he rated at 7/10 in intensity. (Tr. 511). Ingram did not report pain symptoms for the remainder of 2018. *See* (Tr. 495-509). During this period, Ingram's physical exam results were unremarkable, and Dr. Nouraldin continued to prescribe Percocet 5-325 mg., to be taken as needed, even when Ingram reported no pain symptoms. (Tr. 495-96, 498, 500-01, 503-16, 518, 521, 523-25, 527-29).

Ingram did not report pain symptoms again until March 2019, when he reported low back pain.  (Tr. 489); *see* (Tr. 491-94).  Ingram continued to report low back pain through December 2019, though his physical examination results were unremarkable.  (Tr. 467, 469, 471, 473, 476, 478, 480, 483, 486).  Dr. Nouraldin continued to treat Ingram with Percocet 5-325 mg., increasing the dose in June 2019 from one tablet as needed once a day to twice a day.  (Tr. 466, 468, 470, 472, 475, 477, 479, 482, 485, 488, 491, 493).  Despite not reporting hip pain specifically, Dr. Nouraldin referred Ingram to an orthopedist.  (Tr. 475).

Meanwhile, on October 8, 2019, Ingram visited Conjeevaram Maheshwer, MD, reporting left hip pain which radiated down to his knee.  (Tr. 457).  Ingram reported his pain as moderate but stated that it was 10/10 in intensity at its worst and only minimally alleviated by medication. *Id.*  Ingram reported difficulty with bathing, dressing, mobility, sitting, and standing as well. *Id.* On physical examination, Ingram had: (i) slightly left antalgic gait; (ii) diminished right lower extremity extension; (iii) tenderness in the lower lumbar spine; (iv) limited lumbar spine range of motion; and (v) 4/5 knee motor power.  (Tr. 458).  X-ray examination of Ingram's lumbar spine and pelvis showed facet joint degeneration throughout Ingram's lumbar spine as well as mild foraminal narrowing at the L5-S1 level.  (Tr. 459).  X-ray examination of Ingram's hip joints was unremarkable. *Id.*  Dr. Maheshwer stated that Ingram's symptoms "should subside with conservative care;" explained to Ingram that, "he certainly does not require any surgery on the hip;" stated that Ingram could "continue with the mobilization weightbearing as tolerated;" and recommended therapy. *Id.*

In January 2020, Ingram reported to Dr. Nouraldin with continued back pain.  (Tr. 463-64).  On physical examination, Ingram had unremarkable results except that: (i) he appeared in pain in the mid lower back; (ii) he had moderate lower lumbar spasm; and (iii) he had limited

lumbar range of motion due to pain with flexion, extension, and lateral bend.  (Tr. 464).

Dr. Nouraldin prescribed Percocet 5-325 mg., to be taken as needed twice a day.  (Tr. 463).

### C.    Relevant Opinion Evidence

#### 1.    Treating Source, Hazem Nouraldin, MD

On February 20, 2020, Dr. Nouraldin completed a two-page form "Medical Source Statement."  (Tr. 584-85).  The form had 12 questions with checkbox and fill-in-the-blank answers.  *Id.*  Six of the questions prompted the doctor to provide medical findings to support his assessment.  *Id.*  According to Dr. Nouraldin's responses, Ingram could: (i) lift 20 pounds occasionally and less than that frequently; (ii) stand/walk between 30 minutes to 1 hour and sit for 1 hour without interruption, though Dr. Nouraldin left blank the question asking for how long in total; (iii) occasionally climb; (iv) frequently balance; (v) rarely stoop, crouch, kneel, and crawl; (vi) occasionally reach and push; and (vii) frequently manipulate.  *Id.*  Dr. Nouraldin also checked answers indicated that Ingram would need to alternate positions; had severe pain which would interfere with his concentration, take him off task, and cause absenteeism; and would need "frequent breaks as needed."  (Tr. 585).

In support of his opinion, Dr. Nouraldin stated that: (i) "chronic pain" supported Ingram's lifting/carrying limitations; (ii) "pulmonary hypertension" supported his standing/walking limitations; (iii) "chronic pain" and "diverticulitis of both small and large intestines" supported his sitting limitations; and (iv) "chronic pain" supported his manipulative limitations.  (Tr. 584-85).

#### 2.    Consultative Examiner, Dariush Saghafi, MD

On May 9, 2019, Ingram visited Dariush Saghafi, MD, for a consultative examination. (Tr. 439).  Ingram reported that despite surgical interventions, he did not feel overall

6

improvement from his diverticulitis.  *Id.*  Ingram reported constant abdominal pain, which he rated as 5/10 in intensity on average.  *Id.*  On physical examination, Ingram was observed to use a cane due to left hip pain and had antalgic gait.  (Tr. 439, 441).  Otherwise, his results were unremarkable.  *See* (Tr. 439-44).  Dr. Saghafi stated that Ingram was able to lift/pull/push between 8 and 10 pounds due to his abdominal surgeries and hernia.  (Tr. 441).  Dr. Saghafi further stated that Ingram was able to bend, walk, and stand for up to 45 minutes.  *Id.*

### 3.  State Agency Consultants

On June 29, 2019, Steve McKee, MD, evaluated Ingram's physical capacity based on a review of the medical record.  (Tr. 93-94).  Dr. McKee found that Ingram could lift 50 pounds occasionally and 25 pounds frequently and stand/walk/sit for up to 6 hours, with no other limitations.  *Id.*  On August 12, 2019, Anton Freihofner, MD, concurred with Dr. McKee's assessment of Ingram's physical capacity.  (Tr. 120-21).

### D.  Relevant Testimonial Evidence

Ingram testified that since the prior ALJ hearing he had pain back and hip pain that radiated down into his legs, causing him to become "very unsteady."  (Tr. 43).  He used a cane whenever he did anything, which Dr. Nouraldin had prescribed around two years before the hearing.  (Tr. 43, 46-47, 51).  Ingram treated his back and hip pain with Percocet, of which he was allowed only two per day.  (Tr. 43-44)*.*  If his back started hurting, he would stop and sit down or stretch on a heating pad.  *Id.*  He also experienced stomach pain because of scar tissue swelling.  (Tr. 43, 53).  Ingram rated his pain to be between 6/10 and 7/10 in intensity on average with medication.  (Tr. 50).  With cold weather, he would just stay on the heating pad.  (Tr. 50-51).

Ingram testified that he had never attempted physical therapy but tried to do water exercises on his own.  (Tr. 44).  When he tried, he felt too much stomach pain to continue.  *Id.* He therefore believed that he likely would not be able to do physical therapy.  *Id.*  Ingram testified that the only treatment left was back surgery, though he was leaning towards injections. (Tr. 44-43).

Ingram testified that he cooked and did light housekeeping work.  (Tr. 47).  He did laundry once per week, which took four and a half hours to do.  *Id.*  He received help from his daughter and son to lift heavy items.  (Tr. 48-49).  He also had an indoor garden.  *Id.*  When his back started to hurt, he played video games.  (Tr. 49).  He could socialize for 10 to 15 minutes before needing to sit for 20 to 30 minutes.  *Id.*  He could sit for about 15 minutes and stand for 20 minutes before needing to change positions.  (Tr. 52).  He could walk four minutes and lift eight pounds at most.  *Id.*  If he lifted something heavier, his stomach would hurt.  *Id.*

Gail Klier, a vocational expert ("VE"), testified that a hypothetical person with Ingram's age and experience could perform Ingram's past work if limited to medium work with frequent climbing of ramps and stairs, occasional climbing of ladders, ropes, or scaffolds, and frequent stooping.  (Tr. 55-56).  The VE testified that the person could also work as a linen room attendant, laundry worker, and bagger.  *Id.*  If limited to no climbing of scaffolds or ropes and to occasional climbing of ramps, ladders, and stairs, the VE testified that the individual would not be able to perform Ingram's past work but would be able to perform the other jobs.  (Tr. 60-61). If further limited to occasional reaching and pulling or use of a cane, the VE testified that the individual could not perform any of those jobs.  (Tr. 57-58).  If the individual had to change positions at will or take unscheduled rest breaks, the VE testified the individual would not be able to work.  (Tr. 58-59).

## III.     Law & Analysis

### A.     Standard of Review

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied.  42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).  And, even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision still cannot be overturned "'so long as substantial evidence also supports the conclusion reached by the ALJ.'" *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (quoting *Jones*, 336 F.3d at 477); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'").  But, even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless.  *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").  And the court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked.").

B.      **Weighing of the Opinion Evidence**

Ingram argues that the ALJ failed to apply proper legal standards and failed to reach a decision supported by substantial evidence in his evaluation of Dr. Nouraldin's opinion.  ECF Doc. 15 at 9-14.  Ingram argues that the ALJ failed to apply proper legal standards by: (i) relying on only a single treatment note; (ii) failing to identify "where" Dr. Nouraldin's report was inconsistent with his course of treatment; (iii) cherry picking evidence; and (iv) playing doctor. ECF Doc. 15 at 9-11, 13.  Ingram argues that there was substantial evidence supporting Dr. Nouraldin's opinion, such as Ingram's subjective symptom complaints of pain, treatment with Percocet, abnormal objective exam findings in January 2020, Dr. Saghafi's opinion, and Dr. Maheshwer's objective findings.  ECF Doc. 15 at 11-13.

The Commissioner disagrees, arguing that the ALJ did not rely on a single treatment note or cherry pick evidence; rather, he based his decision on the longitudinal record, which the ALJ had summarized in the pages preceding his analysis of the opinion evidence.  ECF Doc. 17 at 4-6.  The Commissioner argues that the ALJ reasonably determined that Dr. Nouraldin's opinion was unsupported by his own treatment notes and inconsistent with other medical evidence, even if Ingram can point to other evidence he contends supports a contrary conclusion.  ECF Doc. 17 at 5-8.  To the extent Ingram attempts to challenge the ALJ's evaluation of Dr. Saghafi's opinion, the Commissioner argues the issue has been forfeited.  ECF Doc. 17 at 8-9.

At Step Four of the sequential evaluation process, the ALJ must determine a claimant's RFC after considering all the medical and other evidence in the record.  20 C.F.R. § 404.1520(e). In doing so, the ALJ is required to "articulate how [he] considered the medical opinions and prior administrative medical findings."  20 C.F.R. § 404.1520c(a).  At a minimum, the ALJ must explain how he considered the supportability and consistency of a source's medical opinion(s),

10

but generally is not required to discuss other factors.  20 C.F.R. § 404.1520c(b)(2)[4].  According

to the regulation, the more consistent a medical opinion is with the evidence from other medical

and nonmedical sources, the more persuasive the medical opinion will be.  This is the

consistency standard.  And the regulation specifies that the more relevant the objective medical

evidence and supporting explanations presented by a medical source are to support his or her

medical opinion, the more persuasive the medical opinion will be.  This is the supportability

standard.  *See* 20 C.F.R. § 404.1520c(c)(1)-(2).

As an initial matter, the court agrees with the Commissioner that Ingram has forfeited any

challenge to the ALJ's evaluation of Dr. Saghafi's opinion.  Ingram's list of issues, summary of

his argument, and the body of his argument present a challenge to the ALJ's evaluation of

Dr. Nouraldin's opinion exclusively.  *See* ECF Doc. 15 at 1, 8-14.  Ingram merely tags a short

one-paragraph argument at the end of a multi-page challenge to the ALJ's evaluation of a

different opinion, without specifically indicating whether he intended to also challenge the ALJ's

evaluation of Dr. Saghafi's opinion.  Therefore, the court does not read Ingram's initial brief as

contesting the ALJ's evaluation of Dr. Saghafi's opinion.  *McPherson v. Kelsey*, 125 F.3d 989,

995-96 (6th Cir. 1997).

As for Dr. Nouraldin, the court finds that the ALJ arguably failed to apply proper legal

standards in his analysis.  42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241.  The ALJ stated that he

discounted Dr. Nouraldin's opinion because:

> [I]t is not supported by his physical examinations of the claimant that were
> generally unremarkable.  Furthermore, on April 9, 2018, Dr. Nouraldin
> documented that the claimant was not at risk for falls; his functional mobility was
> not impaired; and the claimant's pain did not affect his level of function (B8F/56).
> Dr. Nouraldin's medical opinion is not persuasive because it is not consistent with

---

[4] Other factors include: (1) the length, frequency, purpose, extent, and nature of the source's relationship to the client; (2) the source's specialization; and (3) "other factors," such as familiarity with the disability program and other evidence in the record.  20 C.F.R. § 404.1520c(c)(3)-(5).

the conservative course of treatment and his continuation of Percocet 5-325 mg
"as needed" twice daily since November 2016, with no subsequent change.

(Tr. 24).  It is apparent from the ALJ's analysis that he considered the supportability of

Dr. Nouraldin's opinion when he compared the opinion to Dr. Nouraldin's treatment notes and

the course of treatment that he prescribed.  *See* 20 C.F.R. § 404.1520c(c)(1).  And the reasons

that the ALJ gave for his supportability findings were adequate and supported by substantial

evidence.

Although Ingram faults the ALJ for not citing more treatment notes showing generally

unremarkable objective examination results, we do not examine the ALJ's decision on a granular

basis.  The ALJ is not required to package his explanation of a particular issue into a single, tidy

paragraph; rather, we read the ALJ's decision "as a whole and with common sense."

*Buckhannon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678–79 (7th Cir. 2010).  The ALJ's

summary of the medical record included a discussion of Dr. Nouraldin's objective exam

findings, of which the ALJ repeatedly noted that Ingram was "pleasant and his gait was normal"

and had "normal examinations" from October 2016 through December 2019.  *See* (Tr. 20-23).

And in the ALJ's analysis of Ingram's subjective symptom complaints – located one page before

the ALJ's analysis of Dr. Nouraldin's opinion – the ALJ stated:

> Significantly, Dr. Nouraldin consistently documented that the claimant's gait was
> 'normal' and the examinations of the abdomen/gastrointestinal were consistently
> normal with no tenderness and no distention/swelling (see above and see B8F/10,
> 12, 14, 17, 19, 21, 24, 27, 32-33, 35, 36-37, 39, 41-42, 44-45, 46-47, 48-49, 50-
> 51, 53, 55, 57, 62, 65-66, 72-73, 80, 83, 86-87, 92-93, 95-96, 98-99, 101-102,
> 105, 108-109, 111-112, 114-115)

(Tr. 23).  The ALJ was not required to duplicate theses citations to support a reason when, as

here, the evidence upon which the ALJ relied on can be readily determined by looking elsewhere

in his decision.  *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006); *see also Crum v.*

12

*Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) ("No doubt, the ALJ did not

reproduce the list of these treatment records a second time when she explained why Dr. Bell's

opinion was inconsistent with this record.  But it suffices that she listed them elsewhere in her

opinion.").

In the same vein, the ALJ did not "cherry pick" evidence.  Cherry picking occurs when

the "ALJ selectively includes only those portions of the medical evidence that places a claimant

in a capable light and fails to acknowledge evidence that potentially supports a finding of

disability."  *Nathaniel F. v. Comm'r of Soc. Sec.*, No. 2:20-cv-5364, 2022 U.S. Dist. LEXIS

24644, at *24 (S.D. Ohio Feb. 11, 2022) (citing *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708,

724 (6th Cir. 2014)).  Had the ALJ claimed that Dr. Nouraldin treatment notes *always* reflected

unremarkable objective exam findings, that would constitute cherry picking because there are

treatment notes that directly contradict such a conclusion.  But that's not what the ALJ did.  The

ALJ found that Dr. Ingram's treatment notes were generally unremarkable.  The ALJ

summarized the treatment notes that were unremarkable and those that were remarkable for

negative objective examination findings.  (Tr. 20-23).  Weighing the inconsistency unfavorably

to Ingram's position is not cherry picking.  *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th

Cir. 2009) ([T]he same process can be described more neutrally as weighing the evidence.").

The ALJ also did not "play doctor."  Ingram claims that the ALJ did so when he stated

that "surgical intervention to Mr. Ingram's hip and back would correlate to severity."  ECF Doc.

15 at 13 (citing (Tr. 22)).  But the portion of the ALJ decision Ingram cited is the ALJ's

summary of the evidence, not the ALJ's analysis of Dr. Nouraldin's opinion.  To the extent

Ingram's argument refers to the ALJ's reliance on Dr. Nouraldin's "conservative course of

treatment and … continuation of Percocet," those were not improper medical findings either.

(Tr. 24).  Taking pain medication, even Percocet, is considered a conservative course of treatment.  *Hauser v. Comm'r of Soc. Sec.*, No. 1:12-cv-796, 2014 U.S. Dist. LEXIS 1808, at *26 (S.D. Ohio Jan. 6, 2014) ("In terms of medical care, it is proper to classify taking prescription medications and receiving injections as "conservative" treatment."); *see also Cordell v. Astrue*, No. 4:09-cv-19, 2010 U.S. Dist. LEXIS 8634, at *37 (E.D. Tenn. Jan 13, 2010) (describing treatment with Percocet as "conservative").  A lack of changes in a claimant's prescription over several months, despite monthly visits, can be evidence that the claimant's symptoms were effectively managed with medication at the prescribed dosage or that the claimant's symptoms were not as limiting as alleged.  *See Kilcrease v. Comm'r of Soc. Sec.*, No. 4:16-cv-85, 2018 U.S. Dist. LEXIS 38675, at *27-28 (E.D. Tenn. Mar. 9, 2018); *Garcia v. Comm'r of Soc. Sec.*, No. 1:16 CV 2682, 2018 U.S. Dist. LEXIS 22672, at *45 (N.D. Ohio Feb. 12, 2018).

The ALJ's analysis, however, is flawed in that it is not apparent how the ALJ considered the consistency of Dr. Nouraldin's opinion with the nonmedical evidence and evidence from other treatment providers.  *See* 20 C.F.R. § 404.1520c(c)(2).  But the court concludes that the lack of an explanation on the consistency factor was harmless.  *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009).  Once the ALJ determines that a medical source opinion is unpersuasive as unsupported by the source's own examination findings and provides a coherent explanation for why, any failure to also explain whether the source's opinion was consistent with other medical and nonmedical evidence is necessarily harmless.  *Okonski v. Comm'r of Soc. Sec.*, No. 3:20-cv-1614, 2021 U.S. Dist. LEXIS 204564, at *30 (N.D. Ohio Oct. 25, 2021); *see also DeBerry v. Comm'r of Soc. Sec. Admin.*, 352 F. App'x 173, 176 (9th Cir. 2009) (determining that an ALJ's insufficient reason was harmless when the ALJ gave other,

14

legitimate reasons for discounting an opinion).  Thus, any shortcoming in the ALJ's compliance with 20 C.F.R. § 404.1520c in this case provides no basis for remand.

### C.    RFC Findings

Ingram argues that the ALJ erred in determining his RFC.  ECF Doc. 15 at 14-19. Ingram argues that there was substantial evidence indicating that he lacked the ability to lift, stand, walk, bend, and stoop at the medium exertional level and that he required the use of a cane.  ECF Doc. 15 at 15-17.  Ingram argues that the ALJ gave inadequate reasons for discounting his subjective symptom complaints, because: (i) he visited Dr. Nouraldin on a monthly basis; (ii) the ALJ played doctor by relying on his Percocet treatment and lack of surgery for his hip; and (iii) the ALJ failed to discuss the impact of his abdominal issues and focused instead on evidence related to his back and hip.  ECF Doc. 15 at 17-19.  And he argues that the ALJ failed to adequately address the issue of "sustainability."  ECF Doc. 15 at 17.

The Commissioner responds that the ALJ reasonably determined that the evidence did not support a finding that a cane was medically necessary.  ECF Doc. 17 at 9-10.  The Commissioner argues that Ingram has not meaningfully elaborated on what he means by a failure to analyze sustainability.  ECF Doc. 17 at 10.  And the Commissioner argues that the ALJ gave adequate and well supported reasons for his RFC findings.  ECF Doc. 17 at 10-12.

As stated above, the ALJ must determine at Step Four a claimant's RFC by considering all relevant medical and other evidence.  20 C.F.R. § 404.1520(e).  The RFC is an assessment of a claimant's ability to do work despite his impairments.  *Walton v. Astrue*, 773 F. Supp.2d 742, 747 (N.D. Ohio 2011) (citing 20 C.F.R. § 404.1545(a)(1) and SSR 96-8p, 1996 SSR LEXIS 5 (July 2, 1996)).  "In assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"  SSR 96-8p, 1996 SSR

15

LEXIS 5. Relevant evidence includes a claimant's medical history, medical signs, laboratory findings, and statements about how the symptoms affect the claimant. 20 C.F.R. § 404.1529(a); *see also* SSR 96-8p, 1996 SSR LEXIS 5.

A claimant's subjective symptom complaints may support a disability finding only when objective medical evidence confirms the alleged severity of the symptoms. *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989). Nevertheless, an ALJ is not required to accept a claimant's subjective symptom complaints and may properly discount the claimant's testimony about his symptoms when it is inconsistent with objective medical and other evidence. *See Jones*, 336 F.3d at 475–76; SSR 16-3p, 2016 SSR LEXIS 4, at *15 (Mar. 16, 2016). In evaluating a claimant's subjective symptom complaints, an ALJ may consider several factors, including the claimant's daily activities, the nature of the claimant's symptoms, the claimant's efforts to alleviate his symptoms, the type and efficacy of any treatment, and any other factors concerning the claimant's functional limitations and restrictions. SSR 16-3p, 2016 SSR LEXIS 4, at *15; 20 C.F.R. § 404.1529(c)(3).

If an ALJ discounts or rejects a claimant's subjective complaints, he must clearly state his reasons for doing so. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ need not explicitly discuss each of the factors. *See Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012). And although the ALJ must discuss significant evidence supporting his decision and explain his conclusions with sufficient detail to permit meaningful review, there is no requirement that the ALJ incorporate all the information upon which he relied into a single tidy paragraph. *See Buckhannon ex rel. J.H.*, 368 F. App'x at 678–79.

### D.     Assistive Device Limitation

Before an ALJ can find that a hand-held assistive device is medically required, "there must be medical documentation establishing the need for a hand-held device to aid in walking or standing, and describing the circumstances for which it is needed … ."  SSR 96-9p, 1996 SSR 6, at *19 (July 2, 1996).  The claimant's testimony as to the need or use of a cane is not "medical documentation."  *Mitchell v. Comm'r of Soc. Sec.*, No. 13CV01969, 2014 U.S. Dist. LEXIS 1103257, at *25 (N.D. Ohio July 14, 2014), *report and recommendation adopted*, 2014 U.S. Dist. LEXIS 104106 (N.D. Ohio July 29, 2014).

Ingram has not established a basis for remand on account of the ALJ's finding that a cane was not medically necessary.  The ALJ determined that a cane was not medically necessary because: (i) despite Ingram's testimony, none of Dr. Nouraldin's treatment notes showed a prescription for a cane; and (ii) the evidence on file repeatedly showed normal gait.  (Tr. 23).  Both findings were accurate and supported by substantial evidence.  *See* (Tr. 20-23 (summarizing the various treatment notes showing normal gait); *see also Miley v. Comm'r of Soc. Sec.*, No. 1:20-cv-2550, 2021 U.S. Dist. LEXIS 244271, at *30 (N.D. Ohio Dec. 22, 2021) ("[T]he regulations do not require the ALJ to prove a negative … ."); *Meyer v. Comm'r of Soc. Sec.*, No. 1:12-cv-822, 2013 U.S. Dist. LEXIS 179886, at *15 (S.D. Ohio Dec. 20, 2013) ("It is illogical to require the ALJ to cite evidence that does not exist."), *report and recommendation adopted*, 2014 U.S. Dist. LEXIS 7078 (S.D. Ohio Jan. 21, 2014).

Ingram points to Dr. Nouraldin's opinion, Dr. Saghafi's objective exam findings, and his testimony as evidence establishing the medical necessity of a cane.  ECF Doc. 15 at 16.  Although Dr. Nouraldin stated in his opinion that a cane and a brace had been prescribed (Tr. 585), as discussed above, the ALJ reasonably determined that Dr. Nouraldin's opinion was

unsupported by his own treatment notes.  *See Napier v. Colvin*, No. 1:13-cv-583, 2014 U.S. Dist. LEXIS 87076, at *15 (S.D. Ohio June 26, 2014).  Ingram's own testimony regarding his need to use a cane is irrelevant for purposes of determining whether one was medically necessary. *Mitchell*, No. 13CV01969, 2014 U.S. Dist. LEXIS 1103257, at *25.  And Ingram's reference to a single instance in which he was observed to have an antalgic gait does no more than identify a conflict in the evidence that the ALJ was free to resolve against his position and which we cannot re-weigh on judicial review.  *Jones*, 336 F.3d at 476.

The court finds no merit to Ingram's argument that the ALJ erred by not including in his RFC findings a limitation specific to his use of a cane.  To the contrary, a review of the administrative record reveals no medical records created by Dr. Nouraldin in which he either prescribed the use of a cane or found that one was medically necessary.

### E.    Subjective Symptom Complaints

The ALJ applied proper legal standards and reached a decision supported by substantial evidence in his evaluation of Ingram's subjective symptom complaints.  .  42 U.S.C. § 405; *Rogers*, 486 F.3d at 241.  The ALJ complied with the regulations by: (i) assessing Ingram's RFC in light of the medical evidence, his testimony, and other evidence in the record; and (ii) clearly explaining that he rejected Ingram's subjective symptom complaints because his statements regarding intensity, persistence, and limiting effects of his symptoms were not consistent with the objective medical evidence.  20 C.F.R. § 404.1520(e); SSR 16-3p, 2016 SSR LEXIS 4, at *3-4, 11-12, 15; SSR 96-8p, 1996 SSR LEXIS 5, at *13-15; (Tr. 20-23).  And the ALJ provided sufficiently clear reasons for rejecting Ingram's subjective symptom complaints when he stated that:

> I find that the objective medical evidence, clinical findings on examination, and course of treatment in this case are not consistent with disabling physical

impairment or disabling pain and are more consistent with the stated [RFC].  As recounted above, the x-rays of the left hip were "normal" and x-rays of the lumbar spine showed evidence of facet joint degeneration throughout the lower lumbar spine and evidence of "mild" foraminal narrowing at the L5-S1 level, but the disc spaces, were well preserved.  Overall the physical examinations are generally unremarkable … .  Significantly, Dr. Nouraldin consistently documented that claimant's gait was "normal" and the examinations of the abdomen/gastrointestinal were consistently normal with no tenderness and no distention/swelling … .  On April 9, 2018, Dr. Nouraldin documented that the claimant was not at risk for falls; his functional mobility was not impaired; and the claimant's pain did not affect his level of function … .  The claimant has treated with Dr. Nouraldin on a regular basis, being prescribed Percocet 5-325 mg "as needed" twice daily since November 2016 … .  The claimant did not pursue physical therapy and he did not return to see Dr. Maheshwer.  He was not to see a gastroenterologist during the relevant timeframe.  While the claimant has received medical care on a regular basis, he has not required or received frequent care for any medical condition.  From all of this, I find that the claimant's symptoms and limitations are not as severe as alleged.

(Tr. 23) (citations omitted).

    With one exception, Ingram's arguments for procedural error are not persuasive.

Ingram's one-sentence argument that the ALJ's RFC analysis was deficient "by failing to

address the issue of sustainability" has not established a failure on the part of the ALJ to apply

proper legal standards.  *See McPherson*, 125 F.3d at 995-96.  The ALJ did not make improper

lay medical findings by commenting on Ingram's need for a hip surgery.  The ALJ merely

repeated Dr. Maheshwer's statement that Ingram did not require hip surgery.  (Tr. 22); *see* (Tr.

459 ("I clearly explained that [Ingram] certainly does not require any surgery on the hip since it

appears entirely normal.")).  And as discussed above, the ALJ could rely on Dr. Nouraldin's

limited course of treatment to find his pain symptoms less severe than alleged.  *See Kilcrease*,

No. 4:16-cv-85, 2018 U.S. Dist. LEXIS 38675, at *27-28; *Garcia*, No. 1:16 CV 2682, 2018 U.S.

Dist. LEXIS 22672, at *45.

    The one exception was the frequency of Ingram's medical care visits.  The ALJ could

rely on the frequency of Ingram's visits in evaluating the severity of his alleged symptoms.  *See*

19

SSR 16-3p, 2016 SSR LEXIS 4, at *23 ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, … we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.").  But the ALJ could not do so "without considering possible reasons he … may not … seek treatment consistent with the degree of his … complaint."  *Id.* There is no indication in the ALJ's decision that he considered possible reasons for Ingram's failure to seek other or more frequent treatment.

Nevertheless, I find that any error did not prejudice Ingram because the other reasons given by the ALJ were adequate, supported by substantial evidence, and could independently sustain the ALJ's RFC determination.  *Rabbers*, 582 F.3d at 654.  As the ALJ noted: (i) Ingram's hip x-ray results were "normal" (Tr. 459); (ii) Ingram's lumbar spine x-ray results were mixed, showing facet joint degeneration, mild foraminal narrowing at L5-S1, and well-preserved disk spaces (Tr. 459); (iii) Ingram's objective examination results, including those of his abdomen and lower extremities, were generally unremarkable (Tr.  467, 469, 471, 473, 476, 478, 480, 483, 486, 495-96, 498, 500-01, 503-16, 518, 521, 523-25, 527-29, 548-49, 551-52, 554-55, 557-58, 560-61, 567-68, 570-71, 580-81); (iv) Ingram's April 2018 fall screening assessment results showed no impaired mobility or pain affecting his level of functioning (Tr. 515); and (v) Ingram's course of treatment for his pain symptoms remained unchanged, albeit for not as long as the ALJ portrayed (Tr. 462, 466, 468, 470, 472, 475, 477, 479 (Percocet 5-325 mg., as needed, twice daily since June 2019)).  And the ALJ's RFC findings were further supported by opinion of the state agency consultants, the evaluation of which Ingram has not challenged.  (Tr. 93-94, 120-21).

Ingram contends that the medical evidence supported greater limitations than those the ALJ found.  But the ALJ considered all the evidence Ingram has relied on to make that argument (his surgical history, Dr. Maheshwer's treatment notes, Dr. Saghafi's opinion and objective findings, Dr. Nouraldin's opinion, and Ingram's subjective symptom statements).  *Compare* ECF Doc. 15 at 15-19, *with* (Tr. 20-24).  The question is whether there was enough evidence that a reasonable mind might accept as sufficient to support the ALJ's conclusions, and there was. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).  Even if other evidence in the record or even a preponderance of the evidence in the record could have supported a different conclusion, once it is determined that substantial evidence supported the ALJ's subjective symptom evaluation, it cannot be remanded for that error.  *O'Brien*, 819 F. App'x at 416; *Jones*, 336 F.3d at 476; *Rogers*, 486 F.3d at 241.

Because the ALJ applied proper legal standards and his conclusions were reasonably drawn from the record, the ALJ's evaluation of Ingram's subjective symptom complaints and ultimate RFC assessments fell within the Commissioner's "zone of choice" and cannot be disturbed by this court.  *Mullen*, 800 F.2d at 545.

IV.     **Conclusion**

Because any error in the ALJ's evaluation of the opinion evidence was harmless and the ALJ otherwise applied proper legal standards and reached a decision supported by substantial evidence, the Commissioner's final decision denying Ingram's applications for DIB and SSI is affirmed.

**IT IS SO ORDERED.**

Dated: June 22, 2022

Thomas M. Parker
United States Magistrate Judge